643 So.2d 229 (1994)
David Anthony PAPE
v.
ODECO, INC. and Odeco (U.K.), Inc.
No. 93-CA-1005.
Court of Appeal of Louisiana, Fourth Circuit.
September 21, 1994.
*230 Aubrey E. Denton, Aaron W. Guidry, Porter, Denton & Kobetz, Lafayette, and Carl J. Barbier and Kelly Barbier, Law Offices of Carl J. Barbier, New Orleans, for plaintiff/appellant.
James H. Daigle and E. John Heiser, Lemle & Kelleher, New Orleans, for defendants/appellees.
Before SCHOTT, C.J., and BARRY, LOBRANO, ARMSTRONG and JONES, JJ.
BARRY, Judge.
In this maritime claim David Anthony Pape appeals a judgment which grants in part a partial summary judgment in favor of ODECO, Inc. and ODECO(UK), Inc. [defendants].[1] Consolidated with this appeal is the writ application in which ODECO and ODECO(UK) sought review of the denial of their partial summary judgment (# 93-C-0712).
According to Pape's original petition, on October 26, 1990 ODECO and ODECO(UK), Delaware corporations doing business in Orleans Parish, owned, operated and/or controlled the drilling vessel OCEAN VALIANT. Pape, a citizen and resident of Great Britain, injured his back while working as a floorhand racking drill pipe on the vessel. He alleged ten acts of negligence. Under La.C.C. art. 2317 he alleged the defendants were owners and/or custodians of the defective pipe racks. He also claimed the defendants were responsible for the design, manufacture and construction of the OCEAN VALIANT. The defendants filed an answer and exceptions of no cause and no right of action based on the facts that Pape and the vessel were in the North Sea and neither ODECO nor ODECO(UK) was Pape's employer or owned the OCEAN VALIANT.
Before judgment on the exceptions, defendants filed for "summary judgment on exceptions of no right ... and no right of action." Defendants claimed there was no genuine issue of material fact and Pape had no claim under the Jones Act, general maritime law, and Louisiana law. They argued that Pape's claim fell under 46 U.S.C. App. § 688(b)[2] and he had no Jones Act and general maritime claim. The defendants also argued that Pape had no claim under La.C.C. arts. 2315 and 2317 because Louisiana law did not apply. They attached a statement of uncontested facts, a request for admissions, Pape's responses, and affidavits of George Holt and Mark Childers.
According to the defendants' statement of uncontested facts, Pape was a citizen, resident and domiciliary of the United Kingdom; he was never a U.S. citizen and never resided in the United States. ODECO(UK) was a foreign corporation organized pursuant to the laws of Delaware with its principal place of business in Aberdine, Scotland. On October 26, 1990 the OCEAN VALIANT was exploring for oil and gas over the continental shelf of the United Kingdom; the rig was never within the territorial waters of Louisiana or the United States. Pape was employed by ODECO(UK) and was treated for his injuries in the United Kingdom. Pape has never received compensation benefits, maintenance and cure and/or social security benefits under U.S. law.
Pape's responses to the defendants' request for admissions admitted: he was a *231 citizen and resident of the United Kingdom; he was employed by ODECO(UK), a subsidiary of ODECO, and he did not know its principal place of business; he was a roughneck on the OCEAN VALIANT on October 26, 1990. When asked to verify that the rig was located in the North Sea on the continental shelf of Scotland, Pape responded that the rig was approximately 100 miles off Montroe, Scotland. Pape could not say "whether it [OCEAN VALIANT] was positioned over the Continental Shelf of the United Kingdom."
In an affidavit George Holt, personnel manager of ODECO(UK), Inc., declared that on October 26, 1990 Pape was a roughneck aboard the self-propelled, semi-submersible rig, OCEAN VALIANT, located on the continental shelf off the coast of Scotland, United Kingdom. Holt noted Pape's British citizenship, his medical treatment in Middlesbrough, England, and his sick pay and social security benefits from the British government. The affidavit stated that the OCEAN VALIANT's daily drilling reports were attached, but the reports are not in the record.
In an affidavit Mark Childers, ODECO Drilling, Inc. Domestic Operations Vice-president, declared that the OCEAN VALIANT was manufactured in South Korea by Hyundai Heavy Industries, Ltd., it was commissioned in October, 1988 and used by Amoco to drill off the coast of China until 1989. The rig moved in early 1990 to the North Sea to drill for Shell Oil Company. Childers stated that the rig was never within U.S. territorial waters or waters overlaying its continental shelf and ODECO did not manufacture or construct the rig.
The defendants attached a letter from J.K. Tierney, a solicitor in Scotland, who stated that the OCEAN VALIANT was in the Scottish area of the UK sector of the continental shelf and Pape had remedies under Scotland law. Mr. Tierney offered to provide an affidavit, but the only document in the record is a letter containing Tierney's unsworn statements. The inclusion or exclusion of the affidavit does not alter our decision.
Pape filed an opposition to the exceptions and summary judgment motion and attached: the deposition of Mark Childers; an affidavit of his attorney's secretary, Alysia Daspit in which she stated that the Louisiana Secretary of State's records show the defendants' principal places of business are in New Orleans; an unsigned copy of a notice of a 1442 deposition; letters relating to Pape's attempts to depose a 1442 corporation designee, whom the defendants would not provide; and a copy of the 1958 United Nations Convention which defines the continental shelf. Pape argued that the defendants did not establish that he was injured in another nation's territorial waters or over another nation's continental shelf.
By deposition Childers testified that he could not state who was the current or prior owner of the OCEAN VALIANT. Childers admitted that in 1990 it was "not my responsibility" to know the OCEAN VALIANT'S construction history and location data, but he "was aware generally of what the rig was doing." He said to the best of his knowledge the rig had never been in U.S. territorial waters or over its continental shelf.
The trial court granted summary judgment (evidently based on the no cause of action exception) and dismissed Pape's petition. Pape filed for a rehearing and/or new trial in order to file a supplemental petition. The trial court granted the motion and leave to file a subsequent petition "to correct, as may be necessary, the identities of the owner and/or operator of the `OCEAN VALIANT'." The first supplemental petition alleged that the defendants had their principal place of business in New Orleans. It also alleged the "negligence, unseaworthiness and fault under applicable British law and/or Scottish law and/or any other applicable law...."
The defendants filed a motion for partial summary judgment as to the claims under the Jones Act, general maritime and Louisiana law and attached the same documents. In a second supplemental petition Pape added as a defendant ODECO Enterprises, Inc., the owner/operator of the rig (its principal place of business in New Orleans).
Pape filed an opposition to the partial summary judgment motion and a statement of uncontested facts. Pape stated he was injured *232 while the rig was in international waters in the North Sea. He attached a copy of the brochure on the OCEAN VALIANT (designed by ODECO) and the countervailing affidavit of Kenneth Kaigler, a petroleum engineer, who declared that the rig was built for and owned by ODECO, Inc. on October 26, 1990; and it flew the American flag at the time of the accident. Pape argued that the facts present a choice of laws and summary judgment was not appropriate.
Pape filed a third supplemental petition which added as a defendant Murphy Exploration & Production Company, the successor corporation for ODECO, Inc. and ODECO(UK), and the purchaser of the OCEAN VALIANT, which assumed liability for damages caused to the prior corporations' employees during the course and scope of their employment.
The defendants filed a supplemental supporting memorandum claiming that they filed for the partial summary judgment "solely for the purpose of clarifying the claims and issues before this Court due to the vagueness of plaintiff's pleadings." The defendants did not contest the court's jurisdiction or its ability to apply British and/or Scottish law and did not request that the entire case be dismissed.
The trial court granted a partial summary judgment "dismissing the cause of action of the plaintiff under the Jones Act and the General Maritime Law but reserving unto the plaintiff the cause of action under the Louisiana law and under Scottish and/or British law."
Pape now argues that the trial court erred by granting the partial summary judgment when the defendants requested only a determination of applicable law (A/E # 1 and 2), and by finding that no genuine issues of material fact exist and defendants were entitled to a partial summary judgment as a matter of law (A/E # 3 and 4).
Defendants in the writ application argued that Pape's cause of action under Louisiana law should also have been dismissed. In brief they contend that the partial summary judgment was properly granted as to the Jones Act and general maritime claims.

LAW AND ANALYSIS
This appeal involves a review of the partial summary judgment.
The case was in an unusual procedural posture because defendants originally filed a summary judgment motion on exceptions of no right and no cause of action. When considering a no cause of action exception, the court accepts the well-pleaded allegations as true, and determines from the face of the petition whether the plaintiff is entitled to the relief sought. No evidence may be introduced. La.C.C.P. art. 931. The court must determine whether the law affords a remedy on the facts alleged in the petition. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984), cert. denied, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Partial judgments on such exceptions are prohibited unless there are two or more distinct causes of action. Rodriguez v. American Bankers Insurance Company of Florida, 386 So.2d 652 (La.1980). A cause of action is interpreted to mean the operative facts which give rise to the plaintiff's right to assert his action. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993).
Defendants correctly argue that Pape failed to state a cause of action under the Jones Act and general maritime law because he did not allege (in the petition and supplementals) facts necessary not to fall under 46 U.S.C. § 688(b). Because defendants filed the original summary judgment motion on the exceptions, the no cause of action exception itself was never ruled upon by the trial court. Although Pape did not state a cause of action, this court cannot grant a partial judgment on a no cause of action exception. Such a partial judgment would dismiss one theory of recovery and not the entire cause of action arising from Pape's injury on the OCEAN VALIANT. See Subaru, 616 So.2d at 1234.
We will consider whether the trial court properly granted in part a partial summary judgment. Appellate courts review summary judgments de novo and use the same criteria as the trial court. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. *233 1991). Summary judgment is proper if the pleadings, admissions, depositions and supporting affidavits show there is no issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966 B; Barham & Churchill v. Campbell, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied, 503 So.2d 1018 (La.1987).
A summary judgment may be partial, but it must grant all or at least part of the relief prayed for. It may not be used merely to decide an issue. Verdun v. State through the Department of Health and Human Resources, 559 So.2d 877 (La.App. 4th Cir.1990). A partial summary judgment may not be utilized to dispose of theories of recovery. Succession of Crowe v. Henry, 602 So.2d 243 (La.App. 2d Cir.1992). It is essential to a summary judgment's validity that at least some of the relief prayed for by one of the parties is granted. A summary judgment finding that a plaintiff is a seaman has been reversed. Landry v. John E. Graham & Sons, Inc., 533 So.2d 975 (La.App. 1st Cir.1988) (on rehearing), writ denied, 534 So.2d 431 (La.1988), cert. denied, 490 U.S. 1022, 109 S.Ct. 1749, 104 L.Ed.2d 185 (1989).
In First National Bank of Jefferson Parish v. Lloyd's Underwriters, 629 So.2d 507 (La. 5th Cir.1993), writ denied, 635 So.2d 1110 (La.1994), the Fifth Circuit cited Subaru, 616 So.2d at 1234, for the proposition that there is no reason why a partial summary judgment should be treated differently than a partial judgment on an exception of no cause of action. The Court found that the Supreme Court's concern in Subaru for the uneconomical use of judicial time applied as well to partial summary judgments. The Court reversed a number of partial judgments on exceptions and partial summary judgments on the same basis. The Fifth Circuit held that "partial exceptions of no cause of action and/or partial summary judgments that only attack different theories of recovery, based on the same set of operative facts, without dismissing a party or granting all or part of the relief sought, should not be granted." Id. at 512-13.
When the trial court granted the first motion for summary judgment, it decided whether Pape had a cause of action under particular theories of his case. Thereafter, the trial court granted a new trial in order to allow Pape an opportunity to amend the petition, the proper procedure had it granted a no cause of action exception.
The court then rendered judgment granting in part the partial summary judgment and "dismissing the cause of action ... under the Jones Act and the General Maritime law...." Arguably the court was granting a partial judgment on a no cause of action exception. The court stated its reasons in terms of whether Pape had a cause of action. Regardless, the partial summary judgment dismissed Pape's theory of recovery under the Jones Act and general maritime law; it did not dismiss the entire cause of action arising out of his injury on the OCEAN VALIANT. The court expressly reserved Pape's right of action under Louisiana and Scottish and/or British law. It did not decide which law applied and it did not dismiss a party or the entire cause of action. That ruling encourages piecemeal litigation and uneconomical use of judicial time.
The trial court erred by granting in part the defendants' partial summary judgment. There was no error in the decision to deny summary judgment in part. The judgment is reversed and the matter remanded for further proceedings.
REVERSED; REMANDED
ARMSTRONG, J., dissents with reasons.
ARMSTRONG, Judge, dissents with reasons.
I dissent because there has not been an appealable judgment in this case. Therefore, Pape's appeal must be dismissed. The substantive points raised by Pape should be addressed as part of an appeal once there has been an appealable judgment below. Also, the supervisory writ, granted upon the defendants' application, should be dismissed as well. The substantive points raised by the defendants also should be addressed as part of an appeal once there has been an appealable decision below.
Pape appealed from the trial court's granting the defendants' motion on the issue of the *234 Jones Act and the general maritime law of the United States and that appeal is No. 93-CA-1005. The defendants applied for supervisory writs with regard to the trial court's failure to exclude the application of Louisiana law to Pape's claim, and that supervisory writ application is No. 93-C-0712. Another panel granted that supervisory writ application and it was consolidated with Pape's appeal so that we might consider the merits of the appeal and the supervisory writ together.
Pape's appeal must be dismissed because the decision of the trial court from which Pape appeals, i.e., the decision that the Jones Act and the general maritime law of the United States do not apply to Pape's claim, is not a final judgment, or an interlocutory judgment which may cause irreparable harm, or an otherwise appealable judgment. Instead, the court's decision was an ordinary interlocutory judgment reviewable (along with most other issues) on appeal once there is a final judgment in the case.
Not all judgments are immediately appealable. Generally speaking, "final" judgments are immediately appealable as are those "interlocutory" judgments which may cause irreparable injury.
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment.
La.Code Civ.Proc. art. 1841.
A. An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814.
La.Code Civ.Proc. art. 2083.A.
Because the judgment appealed from by Pape does not threaten irreparable injury, it is necessary to determine whether it is a "final" judgment. In addition to the distinction between "preliminary matters" and "the merits in whole or in part" drawn by the above-quoted article 1841, there also is guidance provided by article 1915:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, except a summary judgment rendered pursuant to Article 966(D).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
B. If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case.
La.Code Civ.Proc. art. 1915 (emphasis added). Thus, a judgment granting a motion for summary judgment is immediately appealable (with an exception not relevant to the present case).
The issue of appealability thus becomes one of whether the defense motion below, which was granted in part by the trial court, was truly a motion for summary judgment.
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or *235 part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
D. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to the amount of damages.
La.Code Civ.Proc. art. 966 (emphasis added). The defense motion below did not actually seek any of the relief prayed for. Pape seeks money damages from the defendants and the defendants seek denial of any such money damages. Even if the trial court had granted the defendants' motion for summary judgment in its entirety, that is, even if the trial court had held that neither the Jones Act, the general maritime law of the United States nor Louisiana law applied to Pape's claim, that decision would not have answered the question of whether Pape would recover, or whether recovery would be denied, as to all or any of the money damages sought by Pape. After that, it still would have been necessary for the trial court to address the issues (under the law of the United Kingdom) of liability and, if liability is found, damages, before there would be any decision as to whether Pape would recover, or whether recovery would be denied, as to all or any of the damages sought by Pape. That decision, as to whether Pape will recover, or whether recovery will be denied, must be answered as to all or some of the damages sought by Pape before either Pape or the defendants will have received relief.
"Motions for partial summary judgment are granted for less than all the relief prayed for, however, it is essential to the validity of a summary judgment that at least some of the relief prayed for by one of the parties is granted." O'Rourke v. Hilton Hotels Corp., 560 So.2d 76, 80 (La.App. 4th Cir.) writ denied, 567 So.2d 1107 (La.1990). "Summary judgment may not be employed to have a court pronounce judgment merely on some underlying issue in the case, since La. C.C.P. art. 966 provides that any party may move for summary judgment in his favor for all or part of the relief for which he has prayed." De Felice v. Garon, 395 So.2d 658, 662-63 (La.1981) (emphasis in original).
The trial court's decision of the defendant's motion for summary judgment resulted in only an interlocutory judgment which did not grant any "relief" sought by any party but instead determined only "preliminary matters." See La.Code Civ.Proc. art. 1841. I do not disapprove of the substance of and intent behind the defendants' motion or the trial court's decision. It is arguably useful and certainly reasonable to decide the choice of law issue as soon as the record permits so the parties know the law under which they are proceeding, but a partial summary judgment is not the correct procedure. Consequently, the trial court's decision on the defendants' motion below is not a final judgment and is not immediately appealable. Of course, Pape (or the defendants) could raise issues as to the trial court's decision as part of a future appeal once there is a final judgment below.
The defendants have come before us, seeking review of the trial court's partial denial of their motion below, by way of supervisory writ rather than appeal. If we were going to consider part of the trial court's decision on the merits it made sense to go ahead and consider all of it on the merits. However, as I believe we should dismiss Pape's appeal, I also believe that addressing the issues raised by the defendants at this time would be one-sided and result in piecemeal appellate review of the choice of law issues. Like the issues raised by Pape, the issues raised by *236 the defendants could be included in a future appeal once there is a final judgment below. Both the appeal and the supervisory writ should be dismissed without prejudice.
NOTES
[1] Pape also filed a notice to file a supervisory writ but only lodged this appeal.
[2] 46 U.S.C. § 688 was amended in 1982 to add subsection (b) which denies a remedy under the Jones Act and general maritime law to foreign seamen in the offshore drilling industry when they are injured in another country's territorial waters or in waters overlaying another country's continental shelf, unless neither the country where the injury occurred nor the seaman's home country provide any remedy. Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374 (5th Cir.1988).