802 So.2d 784 (2001)
Daphne Husser MISURACA
v.
CITY OF KENNER, et al.
No. 01-CA-707.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 2001.
*785 Rykert O. Toledano, Jr., Gordon T. Herrin, Covington, LA, Counsel for Daphne Husser Misuraca, Plaintiff-Appellant.
Gregory J. McDonald, New Orleans, LA, Counsel for City of Kenner and Officer Bryian Robson, Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this personal injury action, plaintiff, Daphne Husser Misuraca ("Plaintiff"), appeals a summary judgment dismissing her claims against the City of Kenner ("Kenner") and Kenner Police Officer Bryian Robson ("Robson"). We affirm.
During the early morning hours of July 27, 1996, Stephen D. Miles lost control of his vehicle while driving on West Esplanade Avenue near Williams Boulevard in Kenner. After he lost control, his car left the roadway, clipped a telephone pole guywire, flipped over, and landed upside-down in the adjacent drainage canal. Bystanders helped Miles and his passenger, David Hibner, out of the overturned vehicle.
Officer Bryian Robson of the Kenner Police Department was the first road officer to arrive at the accident scene. He parked his vehicle in the roadway behind *786 another car and proceeded toward the canal. As he approached the canal, he passed two men, later identified as Frederick 1. Misuraca and Davin Severa, attempting to handle the disconnected guy-wire. He instructed the men to stop handling the guy-wire, which they did. At that point, Robson touched the guy-wire himself to verify that it was not electrically charged.
Robson then proceeded to the edge of the canal where he found Miles and Hibner. After Robson began to interview the victims, Misuraca again attempted to move the disconnected guy-wire. Although Severa deterred Misuraca from wrapping the guy-wire around a metal street sign to prevent grounding, both men were electrocuted when Misuraca yanked on the guy-wire and it contacted a charged electrical line. As a result of the electrocution, Severa received burns to his hands and Misuraca died.
On July 25, 1997, plaintiff filed a wrongful death and survival action against the City of Kenner and Officer Robson among others.[1] In her petition, she alleged that the accident that caused her husband's death was attributable to Kenner and Officer Robson for their
(a) Failure to properly secure and control the accident scene; and
(b) Failure to prevent civilians from participating in the accident scene; and
(c) Failure to properly train police officers to monitor and administrate over an accident of this type; and
(d) Failure to take the necessary steps in order to protect the interest of the public;
(e) Failure to take precautions necessary to avoid the accident;
(f) Otherwise failing to use due care and caution commensurate with the circumstances then and there existing; and
(g) Any and all other acts of negligence proven at a trial on the merits.
On July 2, 1999, Kenner and Robson filed a peremptory exception of no cause of action, which was granted on October 27, 1999. On November 12, 1999, within the time allowed by the trial court, plaintiff filed a supplemental and amending petition alleging that Robson was negligent in allowing civilians to remain on the accident scene among downed electrical lines, failing to usher civilians from the accident scene, and failing to properly secure the accident scene to prevent civilians from contacting downed electrical lines. Plaintiff also alleged that Kenner was negligent in failing to properly train Officer Robson that downed electrical lines were dangerous to anyone on an accident scene.
On May 22, 2000, the trial judge granted Kenner and Robson's Motion to Strike Allegations, including all references to "downed power lines," "downed high voltage lines," "downed electrical power lines," or "downed electrical lines" in the plaintiffs original and supplemental petitions. Kenner and Robson filed a Motion for Summary Judgment, including a Statement of Uncontested Material Facts and Memorandum in support of the Motion. To their Motion for Summary Judgment, Kenner and Robson attached excerpts from Davin Severa's deposition and Bryian Robson's deposition, as well as copies of the Judgment sustaining their Exception *787 of No Cause of Action and the Judgment striking the allegations.
On December 19, 2000, the day of the summary judgment hearing, the plaintiff filed an opposition to the Motion for Summary Judgment with attached deposition excerpts, which the trial court permitted the plaintiff to argue. After taking the matter under advisement, the trial court granted Kenner and Robson's Motion for Summary Judgment and dismissed the plaintiff's claim against them.
In the trial court's written reasons for judgment, it reasoned that, after the allegations of downed power lines were stricken from the pleadings, the plaintiff's only remaining claim was Officer Robson's alleged failure to secure the scene. The lower court also found that Officer Robson did not owe a one-on-one duty to the plaintiff that would fall under that exception to the public duty doctrine. The plaintiff timely filed a motion for appeal.
On appeal, plaintiff asserts that the trial judge erred in finding that there was no genuine issue of material fact as to whether the officers had a duty to secure the accident scene. She argues that the deposition excerpts presented in support of and in opposition to the Motion for Summary Judgment present genuine issues of material fact regarding whether Robson had a duty to secure the accident scene and whether he breached that duty, which are factual questions that should be resolved at a trial on the merits. Finally, plaintiff asserts that the trial court erred in applying the public duty doctrine to this case. She contends that the proper analysis is the discretionary immunity analysis under La. R.S. 9:2798.1.
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Summary judgments are now favored in the law and the rules should be liberally applied. Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5 Cir. 10/31/2000), 772 So.2d 865, writ denied, 00-896 (La.1/26/01), 782 So.2d 636. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. La. C.C.P. art. 966; Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
The mover bears the burden of proof; however, the mover need only to "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim...." La. C.C.P. article 966 C(2). Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. Perricone v. East Jefferson General Hosp., supra. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp. Inc., supra.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Carr v. Wal-Mart Stores, Inc., supra.
In Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, 610, the Louisiana Supreme Court, quoting Stewart v. Schmieder, 386 So.2d 1351 (La.1980), stated:
*788 The public duty doctrine has been defined as follows:
[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. `The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that[,] in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.'
* * *
Courts have previously recognized two exceptions to the public duty doctrine: (1) where the statute or ordinance setting forth the duty indicates by its language that the duty is designed to protect a particular class of individuals; and (2) where the officer's general duty has been transformed into a duty owed to an individual through closeness or proximity in time.
Id. at 610-611. (Citations omitted).
In this case, the lower court formulated the issue in light of the public duty doctrine as follows:
At no time was a one on one [sic] relationship established between Officer Robson and the plaintiff. The only one on one [sic] relationship which might have been established would have been between the officer and the accident victims when assistance was rendered to them personally. The only duty which has been proven to exist was the officer's duty to maintain peace and order which had been accomplished in the securing of the accident scene.
Therefore, it is the opinion of the Court, after hearing the arguments presented and examining the evidence introduced that the defendant ... is entitled to summary judgment due to the fact Officer Robson owed no one on one [sic] duty to the plaintiff which would create an exception to the public duty doctrine.
The lower court was correct in noting that the crucial issue was whether Officer Robson owed a duty to the plaintiff; however, the lower court's reliance on the public duty doctrine and exceptions to that doctrine was misplaced. The traditional public duty doctrine and its exceptions are not the law of Louisiana.[2]
La. R.S. 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," provides:
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or *789 perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
In Cormier v. T.H.E. Ins. Co., 98-2208 (La.09/08/99), 745 So.2d 1, the Louisiana Supreme Court explained the Discretionary Immunity doctrine as follows:
Generally, `Discretionary Immunity' under La.Rev.Stat. 9:2798.1 applies to specific fact situations which satisfy the rule enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under Berkovitz, the court must first consider whether the government employee had an element of choice and his course of action was not specifically prescribed by the statute, regulation, or policy. Conduct cannot be discretionary unless it involves an element of judgment or choice. 108 S.Ct. at 1958. Thus, discretionary immunity will not apply when a specific course of action is prescribed as the employee has no rightful option but to adhere to the directive. Id. On the other hand, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence.
Id. at 6-7.
Applying this test to the facts of the instant case, Kenner has not articulated any social, economic or political considerations surrounding the police officer's actions in handling the immediate investigation or securing the accident scene. Thus, Kenner is not immune from liability under La. R.S. 9:2798.1 and we must analyze Officer Robson's actions under the traditional duty-risk analysis. Hardy v. Bowie, 744 So.2d at 613.
Under the duty-risk analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Berry v. State, Through Department of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412, 414. Whether a duty is owed is a question of law. Id. The inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Id. Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. Id. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question. Id. It *790 is our role to determine whether there is any jurisprudential or statutory rule or policy reason why, under the facts and circumstances of this case, Kenner would owe a duty to plaintiff to compensate her for her husband's death. Id.
In Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, the Louisiana Supreme Court enunciated the duty of law enforcement officers:
[The] legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm. When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm. [Further], this court stated that the scope of an officer's duty is to choose a course of action which is reasonable under the circumstances. In other words, the scope of an officer's duty to act reasonably under the circumstances does not extend so far as to require that the officer always choose the `best' or even a `better' method of approach.
Id. at 1177.
Considering all the facts and circumstances of this case, we conclude that Officer Robson had a duty to act reasonably to investigate a one-car traffic accident. When he arrived on the scene, he had the affirmative duty to choose a reasonable course of action in investigating the accident and ensure that motorists were not subjected to unreasonable risks of harm. Having identified the duty owed by Officer Robson, we now turn to a determination of whether that duty was breached.
Our review of the pleadings and other supporting documents supplied by both parties discloses that the following uncontested material facts regarding Robson's actions were established. Robson stated in his deposition that, after he arrived at the accident scene, his first priority was the accident victims. As he approached the accident scene, he had momentary direct contact with the men prior to their electrocution when he instructed the men to stop handling the downed guy-wire. He observed as the men stopped handling the downed guy-wire. He also immediately determined that the downed guy-wire was not electrically charged so it did not pose an immediate danger.
Severa stated in his deposition that, after Robson began his investigation of the accident scene to determine the nature of the accident and the number of victims, while Robson's back was turned, Misuraca, against Robson's previous direction began to handle the downed guy-wire again. After between one to five minutes according to the deposition testimony, while Severa held the loose end of the guy-wire, Misuraca yanked on it, which caused it to connect with a charged electrical line and electrocute them.
Considering the totality of the circumstances, the pleadings and supporting documents reveal that Officer Robson was reasonably discharging his duty when Misuraca and Severa were electrocuted. Consequently, the trial judge properly granted Kenner and Robson's Motion for Summary Judgment.

Conclusion
The traditional public duty doctrine and its exceptions are not the law of Louisiana. Rather, La. R.S. 9:2798.1 and the duty-risk analysis are used to determine whether public entities and their officers and employees *791 are liable. Where, as here, the police officer acted reasonably under the circumstances presented, Kenner is not liable.
For the reasons stated herein, the trial court's ruling granting the City of Kenner and Officer Robson's Motion for Summary Judgment is affirmed. Costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] Davin Severa also filed suit for injuries he received. According to the parties, the suits were consolidated in the district court. The record before this Court on appeal does not contain an order for consolidation of the two cases. Mr. Severa, however, is not a party to this appeal.
[2] The public duty doctrine has never been adopted by the Louisiana Supreme Court. In fact, the supreme court has criticized and rejected it as a categorical rule. See Stewart v. Schmieder, supra and Fowler v. Roberts, 556 So.2d 1 (La.1989).